IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                        CR No. 18-3409 KG

TOMAS FELICIANO FRANCISCO-PEDRO,

      Defendant.

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

COMES NOW Defendant Tomas Feliciano Francisco-Pedro, by and through his attorney, Assistant Federal Public Defender André Poissant, and respectfully moves to suppress all evidence and statements obtained as a result of the unlawful stop, detention, arrest, and interrogation of Mr. Francisco-Pedro that occurred on July 26, 2018, in Roswell, New Mexico. This motion is based on the Fourth and Fifth Amendments to the United States Constitution, Rules 12(b) and 41(h) of the Federal Rules of Criminal Procedure, and the points and authorities included herein.

### BACKGROUND

On July 25, 2018, Homeland Security Investigations received a tip from a person identified as "Jose" about the location of a possible "alien stash house" in Roswell, New Mexico. The tip indicated that the residence was located at 505 South Cedar Avenue in Roswell. Agents initiated surveillance and observed that the windows at the front had reflective tint.

On July 26, 2018, at approximately 11:30 a.m., Homeland Security Investigations agents, Immigration and Customs Enforcement and Removal Operations agents, and Roswell Police Department (RPD) officers surrounded the alleged alien stash house in Roswell. After the RPD officers conducted a "call out," thirteen men exited the residence. According to the government, the thirteen individuals were illegally present in the United States.

HSI Special Agent (SA) Juan Lujan interviewed several of the individuals at the alleged alien stash house. During the questioning, an individual stated that a person had left the residence driving a gold sports utility vehicle (SUV). SA Lujan asked the RPD officers patrol the area and search for vehicles matching the description.

RPD officers stopped a gold Ford Edge SUV with California license plates. The driver of the vehicle presented a Mexican driver's license bearing the name Tomas Humberto-Camacho. A picture of the driver was shown to several of the individuals at the alleged alien stash house who identified the driver as the person who had left the residence in the gold SUV. The driver was arrested.

Approximately eight hours later, SA Lujan interrogated the driver who admitted his real name is Tomas Feliciano Francisco-Pedro. Mr. Francisco-Pedro stated he was pending deportation because he failed to attend his immigration proceedings. SA Lujan showed Mr. Francisco-Pedro two passports found in the SUV he was driving. Mr. Francisco-Pedro stated that the pictures were of his cousins "Shakira" and "Cinco" and they had been arrested a few days before. Mr. Francisco-Pedro explained that his cousins were responsible for the alleged smuggling operation and that he was there visiting them. The

government charged Mr. Francisco-Pedro and the co-defendants with conspiracy to take a hostage, hostage taking, and aiding and abetting.

## DISCUSSION

### I. The evidence was obtained in violation of the Fourth Amendment

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

The RPD officers and federal agents violated Mr. Francisco-Pedro's Fourth Amendment rights by unlawfully stopping and detaining him. As a result, all evidence and statements obtained after the unlawful stop and detention, including Mr. Francisco-Pedro's statement, must be excluded from trial.

#### A. The stop was not justified at inception

In addressing the constitutionality of an investigative detention, the inquiry is twofold. First, the police officer's action must be "justified at its inception." *United States v. Morgan*, 855 F.3d 1122, 1125 (10th Cir. 2017) (quotation omitted). Second, the police officer's action must be reasonably related in scope to the circumstances which justified the interference in the first place. *See Morgan*, 855 F.3d at 1126. The government bears the burden of demonstrating that the seizure was sufficiently limited in scope and duration

to satisfy the conditions of an investigative seizure. *See United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017).

"An individual 'may not be detained even momentarily without reasonable, objective grounds for doing so . . . .' " *United States v. Fox*, 600 F.3d 1253, 1258–59 (10th Cir. 2010) (quoting *Florida v. Royer*, 460 U.S. 491, 498 (1983)). The officer must have an articulable and reasonable suspicion that the person detained is engaged in criminal activity. *Terry*, 392 U.S. at 20. The reasonableness of the officer's actions are analyzed under an "objective standard." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

In this case, Mr. Francisco-Pedro was stopped without reasonable suspicion in violation of the Fourth Amendment. The RPD officers stopped Mr. Francisco-Pedro on an unsubstantiated tip. This case is thus similar to *Florida v. J.L.*, 529 U.S. 266, 268 (2000), in which the Supreme Court held that "an anonymous tip that a person is carrying a gun," "without more," did not establish reasonable suspicion. In that case, "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271. Similar deficiencies are present here. As the Tenth Circuit has repeatedly held, "something more than an anonymous tip of illegal activity is required to provide reasonable suspicion." *United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002). The "something more" was lacking here. *Compare, e.g., United States v. Sanchez*, 519 F.3d 1208 (10th Cir. 2008); *United States v. Garner*, 416 F.3d 1208 (10th Cir. 2005); *United States v. Hauk*, 412 F.3d 1179 (10th Cir. 2005); *United States v. Tucker*,

4

305 F.3d 1193 (10th Cir. 2002). The unsubstantiated tip from Jose and the general description from the alleged undocumented persons did not give the RPD officers the particularized and objective basis necessary to suspect Mr. Francisco-Pedro of criminal activity. As a result, the RPD officers could not lawfully stop and detain Mr. Francisco-Pedro.

The RPD officers did not observe Mr. Francisco-Pedro commit a traffic violation. There is no evidence that Mr. Francisco-Pedro had committed or was committing any offense when the police officers stopped him. The RPD officers had no articulable facts that would support a finding of reasonable suspicion that Mr. Francisco-Pedro had committed any offense. As a result, the stop was not justified by reasonable suspicion and was unlawful in violation of Mr. Francisco-Pedro's rights under the Fourth Amendment.

**B. The detention was unlawful**

A *Terry* stop may only last long enough to address (1) the reason that caused the stop, and (2) related safety concerns. *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). Those tasks are usually limited to requesting a driver's license and vehicle registration, running a criminal history check, and issuing a warning ticket. *See United States v. Karam*, 496 F.3d 1157, 1161 (10th Cir. 2007). "Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed." *Rodriguez*, 135 S.Ct. at 1614. A stop "prolonged beyond that point is unlawful." *Id.*, 135 S.Ct. at 1616 (internal citation omitted).

Here, the detention started at the moment that the police officers stopped Mr. Francisco-Pedro and caused him to yield to the show of authority. *See Morgan*, 936 F.3d

at 1567. At that point, Mr. Francisco-Pedro was seized for purposes of the Fourth Amendment. *Id.* Thereafter, the police officers unreasonably prolonged the detention based on the general description of a gold SUV. When Mr. Francisco-Pedro produced a driver's license, the RPD officers should have allowed him to leave. Instead, they detained Mr. Francisco-Pedro. The RPD officers unlawfully extended the duration of the detention to obtain a photograph of Mr. Francisco-Pedro. Because the RPD officers prolonged the detention beyond the point when it should have concluded, the scope of the detention was unlawful in violation of Mr. Francisco-Pedro's rights under the Fourth Amendment. *See Rodriguez*, 135 S.Ct. at 1616.

### C. The statements must be suppressed

Mr. Francisco-Pedro moves the Court to suppress the statements that he gave after his unlawful arrest. The RPD officers' and federal agents' conduct resulted in a direct violation of Mr. Francisco-Pedro's Fourth Amendment rights. Because there was no temporal or causal break between Mr. Francisco-Pedro's unlawful arrest and his subsequent interrogation, his statements should also be suppressed.

Whether evidence obtained following a Fourth Amendment violation must be suppressed depends on whether the evidence "has been come at by exploitation of (the) illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). In order to break the causal chain between the violation and an accused's subsequent statement, it is not enough "that the statement meet the Fifth Amendment standard of voluntariness but that it 'be sufficiently an act of free will to purge the primary taint.'" *Brown v. Illinois*, 422 U.S. 590,

602 (1975) (quoting *Wong Sun*, 371 U.S. at 486); *see also Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (*Miranda* warnings not enough to purge the taint of an unlawful search and seizure).

As a result, a statement's alleged voluntariness alone is not sufficient to dispel the effects of the illegal search or seizure because that voluntariness only speaks to Fifth Amendment concerns and does not address the distinct policies and interests of the Fourth Amendment. *Brown*, 422 U.S. at 600–603; *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053–1055 (10th Cir. 1994). Similarly, when a person's arrest violates the Constitution, a *Miranda* warning alone is not enough to purge a confession of the taint of the illegal arrest—that is, the Fourth Amendment violation. *See, e.g., Brown*, 422 U.S. at 603 ("It is entirely possible, of course, as the [government] here argues, that persons arrested illegally frequently may decide to confess, as an act of free will unaffected by the initial illegality. But the *Miranda* warnings, alone and per se, cannot always make the act sufficiently a product of free will [to] break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.").

In *Brown*, the Court found that the confession was not sufficiently attenuated from the illegal arrest because less than two hours had elapsed since the defendant's arrest and confession, there were no intervening events, and the arrest without probable cause had a "quality of purposefulness" in that it appeared to be an "expedition for evidence" undertaken "in the hope that something might turn up." *Brown*, 422 U.S. at 605. The burden is on the government to show that the confession is admissible. *Brown*, 422 U.S. at 604.

Consideration of the *Brown* factors leads to the conclusion that although Mr. Francisco-Pedro received *Miranda* warnings, his statements remain tainted by the earlier Fourth Amendment violation. *Kaupp*, 538 U.S. at 633 ("we held in *Brown* that *Miranda* warnings, alone and per se, cannot always . . . break, for Fourth Amendment purposes, the causal connection between the illegality and the confession.") (internal quotation marks omitted). As a result, all of Mr. Francisco-Pedro's statements must be suppressed.

## II.   The statements were obtained in violation of the Fifth Amendment

The Fifth Amendment to the United States Constitution guards individuals from being compelled to incriminate themselves. U.S. Const. amend. V. The Fifth Amendment privilege against self-incrimination includes the requirement that a defendant be made aware of the right to remain silent and to an attorney before police interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

### A.   The initial statements were obtained in violation of *Miranda*

The RPD officers initially questioned Mr. Francisco-Pedro without advising him of his *Miranda* rights. The government is barred from using at trial statements obtained during custodial interrogation before the defendant is given the *Miranda* warning, unless the defendant waived those rights. *Miranda*, 384 U.S. at 444. Thus, a warning is required when the defendant is in custody and subjected to questioning that meets the legal definition of interrogation. *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007).

"Whether a suspect is in custody represents an objective determination." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). A person may be in custody for *Miranda* purposes before being arrested under the Fourth Amendment. *Berkemer v.*

*McCarty*, 468 U.S. 420, 441 (1984). Courts must "ignore the subjective views of interrogating officers" and instead look to "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview." *Revels*, 510 F.3d at 1275.

Mr. Francisco-Pedro was in the functional equivalent of custody when RPD officers ordered him out of the SUV and Mr. Francisco-Pedro obeyed. These circumstances demonstrate that the police controlled the scene. The RPD officers asked highly intrusive and accusatory questions and obtained a photograph of Mr. Francisco-Pedro. There was no indication that Mr. Francisco-Pedro was free to refrain from answering questions. On the contrary, it was obvious there was no alternative but to submit and respond to the questions.

Interrogation includes not only express questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Yepa*, 862 F.3d 1252, 1257 (10th Cir. 2017) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). The RPD officers asked Mr. Francisco-Pedro questions that were reasonably likely to elicit incriminating responses. *See United States v. Perdue*, 8 F.3d 1455, 1465 (10th Cir. 1993). The police officers knew that their questions were reasonably likely to elicit an incriminating response. Under such circumstances, the police officers should have informed Mr. Francisco-Pedro of his rights under *Miranda*

before questioning him and Mr. Francisco-Pedro's initial statements were obtained in violation of *Miranda*.

### B. The subsequent waiver and statements were not voluntary

Approximately eight hours after the arrest, SA Lujan continued the interrogation after advising Mr. Francisco-Pedro of his *Miranda* rights. Mr. Francisco-Pedro did not invoke his right to counsel and he continued to talk to SA Lujan. When a defendant talks to police after being advised of his right to remain silent, the government bears the burden of proving by a preponderance of the evidence that the waiver of the right was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The question whether an individual waived his rights "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

For the post-*Miranda* statements to be admissible at trial, the government has the burden of proving that the waiver of *Miranda* rights was knowing and voluntary. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Edwards v. Arizona*, 451 U.S. 477, 483 (1981); *Miranda*, 384 U.S. at 475. This is a heavy burden because courts must indulge every reasonable presumption against waiver of fundamental constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

In determining whether an individual's rights were voluntarily waived, courts consider the following factors: the individual's age, intelligence, and education; whether the individual was informed of his or her rights; the length and nature of the individual's detention and interrogation; and the use or threat of physical force against the individual.

*United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010). The Tenth Circuit has specifically found that only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension, can a waiver be effective. *Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015); *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996).

Additionally, an admission by a defendant may not be used as evidence at a criminal trial unless the statement was made voluntarily. *See Jackson v. Denno*, 378 U.S. 368, 380 (1964). "The government bears the burden of showing, by a preponderance of the evidence, that a confession is voluntary." *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006) (citing *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004)). The determination of whether a statement is voluntary is based on the totality of the circumstances considering both the characteristics of the accused and the details of the interrogation where no single factor is determinative. *Lopez*, 437 F.3d at 1063; *United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999). In order to evaluate whether a statement or confession was coerced, the court is to consider the characteristics of the defendant, the circumstances surrounding the statements, and the tactics employed by the police. *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993).

The relevant factors are: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *Lopez*, 437 F.3d at 1063–64 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The question is whether the defendant's "will has

been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225–26. Subtle psychological coercion, either by promise of leniency or indirect threat, may render a confession involuntary. *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).

In *Hart v. Attorney Gen. of the State of Fla.*, 323 F.3d 884 (11th Cir. 2003), the Eleventh Circuit found that, although the defendant has been read his rights under *Miranda*, and also signed a *Miranda* waiver form, the defendant's decision to waive his rights and confess was not voluntary, knowing and intelligent. In *Hart*, the court found that the defendant's decision was the product of a law enforcement officer's deception and that statements made by the law enforcement officer was contradictory to the *Miranda* warning. *Hart*, 323 F.3d at 894–895.

In this case, the recording of the interrogation establishes that SA Lujan used coercive tactics to compel Mr. Francisco-Pedro to talk. SA Lujan never inquired of Mr. Francisco-Pedro his level of education or his mental state. In total, the circumstances indicate that Mr. Francisco-Pedro did not have a full awareness of the nature of the rights abandoned and the consequences of the decision to abandon them. The circumstances also indicate that his statements were not voluntarily made. As a result, Mr. Francisco-Pedro's statements were obtained in violation of the Fifth Amendment.

**III.     The fruits of the unlawful stop and interrogation must be suppressed**

The exclusionary rule forbids the use of improperly obtained evidence at trial. *See, Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The stop and detention violated Mr. Francisco-Pedro's Fourth Amendment rights and requires suppression of any statements made and

evidence seized after that time. As a result of the unlawful detention, the agents determined his immigration status and connected him to the alleged alien stash house. The agents would not have obtained this information but for the unlawful stop and detention.

The Tenth Circuit has ruled that this kind of evidence must be suppressed if it was gained from a Fourth Amendment violation. *See United States v. Olivares-Rangel*, 458 F.3d 1104, 1121 (10th Cir. 2006). The immigration status of Mr. Francisco-Pedro, any statements Mr. Francisco-Pedro made, and other evidence were obtained as the result of the unlawful detention, and all evidence and statements must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

SA Lujan violated Mr. Francisco-Pedro's Fifth Amendment rights by the prolonged custodial interrogation without *Miranda* warnings. Because the discovery of his immigration status and connection to the co-defendants, his statements, and other evidence were the result of the prolonged interrogation in violation of *Miranda*, all evidence and statements must be suppressed as the "fruit of the poisonous tree." *Wong Sun,* 371 U.S. at 488. *See also Olivares-Rangel*, 458 F.3d at 1111. Mr. Francisco-Pedro requests that the Court issue an order suppressing this evidence and statements.

## CONCLUSION

Mr. Francisco-Pedro was unlawfully stopped, detained, and interrogated. As a result, the law enforcement agents unlawfully obtained evidence and statements in violation of the Fourth and Fifth Amendments. All evidence and statements must be excluded from use at trial.

Mr. Francisco-Pedro requests an evidentiary hearing on this motion.

In connection with the requested evidentiary hearing and if the government does not otherwise disclose the information, Mr. Francisco-Pedro further requests, pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure, that the government disclose to defense counsel at least forty-eight hours before the hearing any statements, including grand jury testimony, of suppression hearing witnesses. This request is made to avoid delays in the conduct of the hearing, which necessarily will be longer if counsel has to seek recesses to review materials provided by the government at the hearing.

Mr. Francisco-Pedro expressly requests the right to raise any other motions and arguments based on the facts and evidence that may arise during any evidentiary hearings in this case.

The government opposes this motion.

WHEREFORE, for the foregoing reasons, this Court should suppress all the evidence and statements obtained as a result of the unlawful stop, detention, and interrogation of Mr. Francisco-Pedro.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 S. Main St., Ste. 400
Las Cruces, New Mexico 88001
(575) 527-6930

**Electronically filed (November 14, 2018)**
By:  */s/ André Poissant*
     ANDRÉ POISSANT
     Assistant Federal Public Defender

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF filing system which caused a copy to be served via electronic mail to counsel of record Luis A. Martinez, Assistant United States Attorney on November 14, 2018.

                                 **Electronically filed (November 14, 2018)**
                        By:    */s/ André Poissant*
                                 ANDRÉ POISSANT
                                 Assistant Federal Public Defender